Plaintiff, carrier of property damage insurance on a Buick car owned by Elden Dees, having paid the amount necessary to repair the damage inflicted on the car in a collision with the Ford automobile of the defendant, J. Houston Ritter, under act of subrogation, sued to recover said amount on the theory that the collision was caused solely by Ritter's negligence.
The accident occurred in the day time on concrete highway No. 171, not far north of the Town of Many, Louisiana. The Dees car was being operated by Mrs. Dees and was traveling southerly. Mr. Ritter had been traveling northerly on the highway, but came to a stop and then began the execution of a left turn thereon, intending to cross same entirely. The front end of his car was beyond (west) of the medial black line when struck by the Dees car; in other words, his car was then almost squarely across the paved portion of the highway. The left front end of the Dees car struck the side of the right front end of the other car.
For a cause of action, plaintiff alleged that the Ritter car was suddenly and unexpectedly driven to its left and stopped after it had partially preempted a portion of Mrs. Dees' side of the road; that it was then too close to her for the accident to be averted, although she endeavored to do so by sounding the horn and driving onto the road's west shoulder.
The suit is resisted primarily on the ground that Ritter was free of negligence as a cause of the collision, and, secondly, that the accident occurred solely from and because of the negligence of Mrs. Dees in that she was driving at an excessive rate of speed without due regard to traffic conditions about her and without keeping a proper lookout for traffic then and there on the highway. Alternatively, and as a basis for a plea of contributory negligence the alleged acts of negligence accredited to Mrs. Dees are urged in bar of recovery herein.
The demand of the plaintiff was rejected and its suit dismissed. It prosecutes appeal.
The material facts of the case are not in serious dispute. There is obviously a lack of purpose on the part of any witness in the case to misrepresent the true facts.
The highway immediately north of the locale, for a distance of 300 yards, is straight.
Mr. Ritter was on a business mission and to reach his destination it was necessary that he cross the highway where the accident occurred and enter upon a dirt road that leads westerly. As he approached this point, driving on his side of the highway, a moving automobile from the north *Page 351 
and one from the south were observed by him; also, he observed a boy on a motor bike some distance south of him. He then drove his car onto the road's east shoulder and came to a stop to allow the cars to pass before he undertook the left turn. Immediately after the cars had passed, and without allowing time for the motor bike to do so, and without signal of his intention, he drove to his left and stopped on the concrete with the front tires of his car upon the middle line. This put the front bumper twenty-eight inches west of this line. He testified that as the boy on the motor bike had not passed him he applied his brakes, stopped his car and looked to his left in an effort to locate the boy. He also testified that immediately prior to stopping he looked northerly, but did not observe any car coming from that direction. Evidently the Dees car was then in the 300 yard tangent, above the scene of the accident, and the failure of defendant to see it cannot be well explained except on the assumption that he was so close to the car that had just passed, his view northerly was obscured. At this juncture, after admitting that his car was then across the road, he testified: "I had no more than located the motor bike than I heard a horn blow, and at the same instant it hit my car."
In order to determine responsibility for a motor vehicle accident, a driver will be held to have seen that which by the exercise of reasonable diligence he could have seen.
Mrs. Dees was traveling about fifty miles per hour. That speed at that time and place cannot be characterized as excessive. She was on her proper side of the road, and testified that when she first noticed the Ritter car it had stopped on the east side of the road, at which time she was not far away; that the Ritter car was driven across the road and the collision occurred. She was unable to say whether she did anything to avert a collision, beyond applying the brakes, as to which she is not certain. There were no signs on the pavement to indicate application of the brakes. Evidently, as might be expected of most drivers in such circumstances, she became excited and, for this reason, did little to avoid the accident.
The testimony of Mr. Ritter, beyond question, convicts him of gross negligence. It also convinces us that his own acts created a sudden emergency. A left turn on a street or highway, it is obvious to all, and as has many times been judicially held, is about the most dangerous movement a motorist can undertake, and it should not be attempted unless traffic conditions about clearly warrant it.
Rule 9(a), Section 3, Title II of Act 286 of 1938. The meaning and effect of this rule is well reflected from the second paragraph of the syllabi in Seale v. Stephens, La. App.,24 So.2d 651, which reads: "The making of a left turn on a much-traveled highway is a dangerous operation requiring great caution and the responsibility for seeing that such a turn can be made in safety is placed upon the motorist desiring to make the turn."
The following cases are among the many that likewise interpret this rule: Monroe Hardware Company, Inc., v. Monroe Transfer Warehouse Company, Inc., et al., La. App., 167 So. 498; Vernon v. Gillham et al., La. App., 179 So. 476; Fields v. Owens et al., La. App., 186 So. 849; Duke v. Adkins, La. App.,2 So.2d 526; Dudley v. Surles et al., La. App., 11 So.2d 70.
It is of some significance that defendant, while being carried from the scene of the accident to a clinic in Many, stated to the driver, his friend,: "I am sorry this happened — it is all my mistake."
When Mrs. Dees observed the Ritter car at stop, she naturally assumed, as she had the right to do, that her approach would be observed by its driver, and that the car would remain immobilized until she had passed. Under these circumstances, the duty did not devolve upon her to apply the brakes, sound the horn, nor drive onto the shoulder to her right, although, as said before, she thinks she did apply her brakes, and defendant says he heard the horn almost simultaneously with the impact. The cases of Jimes v. Fidelity Casualty Company of New *Page 352 
York et al., La. App., 163 So. 421, and Vines v. Hartford Accident Indemnity Company, La. App., 36 So.2d 729, in principle, are in point.
To excuse Mr. Ritter from liability for the results of the accident we would have to hold that the facts warrant the conclusion that because Mrs. Dees did not suddenly veer her car to her right and get upon the shoulder, after the emergency arose, she was guilty of negligence of such character as to render her equally responsible with Ritter for the collision. The law and jurisprudence of this state, pertinent to the question, are quite clear, and they negative negligence under such circumstances.
We are satisfied from the candid testimony in the case that the Dees car was not a great distance away when defendant stopped his car in the middle of the highway. The distance was so short that going at fifty miles per hour or seventy-three and one-third feet (73 1/3') per second, she did not have time to coordinate her mental faculty and physical power to the extent necessary to avoid running into the Ritter car. It has often been held, and properly so, that faced with such circumstances, a motorist will not be held to the exercise of that accuracy of resolution he would be expected to exercise if acting calmly and deliberately. See: Phillips et ux v. Henderson et al., La. App., 200 So. 192; Brown v. Dickson, La. App., 3 So.2d 562; Hagaman et ux. v. Bankers, Indemnity Insurance Company, La. App., 7 So.2d 390.
Even though it be conceded that Mrs. Dees was in some limited measure negligent in that she was not maintaining the maximum optical alertness, it does not follow from such a concession that, in legal contemplation, such negligence would bar recovery by her had she sued the defendant. Surely such negligence on her part was not the or a proximate cause of the accident. Clearly, defendant's gross negligence, in the respects mentioned, was the and the only proximate cause of it. It was his negligence that originated and set in motion the chain of causation which continued unbroken to the moment of the impact.
For the reasons herein assigned, the judgment of the lower court is annulled, reversed and set aside, and for said reasons there is now judgment in favor of the plaintiff, Fidelity and Guaranty Fire Corporation, and against the defendant, J. Houston Ritter, for the sum of $528.62, together with five per cent (5%) per annum interest thereon from judicial demand until paid, and for costs of this suit. *Page 370