158 So.2d 397 (1963)
Eloi SOILEAU, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellee.
No. 975.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Gist, Murchison & Gist, Attorneys, by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
This appeal arises from a suit in tort for damages, including personal injury, sustained by plaintiff when his automobile was struck from the rear by defendant's insured.
At the time of the collision, plaintiff was stopped for a traffic light. There is no dispute *398 between the parties concerning liability, the sole issue, both in the trial court and on appeal, being that of quantum.
The lower court awarded plaintiff $2,500.00 for his personal injury, plus special damages of $808.13, from which judgment both parties have appealed.
Plaintiff contends that the award for his personal injury should be increased; and that, in addition, he is entitled to an award for future medical expenses. Defendant contends to the contrary, and that the lower court's award for plaintiff's personal injury is excessive.
We will first consider the award for plaintiff's personal injury.
The accident occurred on July 16, 1962. On July 17, 1962, plaintiff consulted Dr. Roderick P. Perron, a general practitioner, who diagnosed plaintiff's condition at that time as a severe cervical myofascial strain, commonly called a whiplash. Dr. Perron examined plaintiff one week later, and finding the same condition, fitted him with a cervical collar. The same condition persisted upon plaintiff being examined by Dr. Perron one week following the second examination. Dr. Perron allowed plaintiff to remove the cervical collar at some time in July or August because of the heat. Plaintiff was again examined by Dr. Perron about three weeks later, noting very little improvement. By September 7, 1962, plaintiff began to show some improvement. Continued improvement was noted as of September 21, 1962. Some amount of regression with increased pain was noted as of October 9, 1962. Plaintiff showed increasing improvement on Dr. Perron's examination of October 19th, November 2nd and November 16th, 1962. On December 7, 1962, Dr. Perron recommended the use of a home traction apparatus, and by December 21, 1962, marked improvement was shown to the extent that Dr. Perron was about ready to discharge plaintiff from further treatment. The doctor had felt, as of November 16, 1962, that all symptoms would subside within two to three months, but plaintiff returned to him in February, 1963, with complaints of increased pain and limitation of motion in the neck. After February, 1963, Dr. Perron examined plaintiff monthly in March, April and May, finding his condition on all three examinations the same as it was in February. Plaintiff was still under his care and treatment at the time of the trial on May 23, 1963, and he felt that plaintiff would not be symptom-free until after an indefinite additional period of treatment.
On December 4, 1962, plaintiff was examined by Dr. Norman P. Morin, an orthopedic surgeon, to whom he was referred by Dr. Perron. Dr. Morin felt that at that time plaintiff had not yet recovered; that he should make use of a home cervical traction apparatus; and, that plaintiff would fully recover without residual disability within four to six months after December, 1962.
Plaintiff was also examined by Dr. Charles V. Hatchette, an orthopedic surgeon, on April 2, 1963. Dr. Hatchette felt plaintiff would recover without disability in possibly three to four weeks with medication and the use of his home traction apparatus. Apparently, plaintiff has discontinued his use of the traction apparatus previously recommended for his use, or had only used it occasionally. Dr. Hatchette felt that if plaintiff had used it more frequently, his symptoms would have been relieved at a considerably earlier date. Regarding his prognosis of a recovery within three to four weeks, Dr. Hatchette stated on cross-examination that he could not be certain of this without further examination.
While we have examined the cases cited by plaintiff and defendant in support of their opposing positions, we feel there is no manifest error in the lower court's award of $2,500.00 in the instant case. Cassreino v. Brown, (La.App., 4 Cir., 1962), 144 So.2d 608; Kennison v. Grain Dealers Mutual Insurance Co., (La.App., 3 Cir., 1963), 150 So.2d 657; and Hickman v. Bawcom, (La. App., 3 Cir., 1963), 149 So.2d 178.
*399 We will next discuss plaintiff's contention that he is entitled to an award for future and anticipated medical expenses.
Drs. Morin and Hatchette felt that use of the home traction apparatus would effect a cure; no future expense would be necessary in that regard. Dr. Perron testified that his estimate "would be strictly a guess"; and that if plaintiff continued to have trouble for two or three more years (which eventuality is not borne out by the evidence), the medical expense would approximate the amount incurred as of the date of trial. In support of his contention, plaintiff cites the cases of Wilson v. Yellow Cab Company of Shreveport, Inc., (La. App., 2 Cir., 1953), 64 So.2d 463; and, Dark v. Brinkman, (La.App., 3 Cir., 1962), 136 So.2d 463. In both of those cases, however, there was a definite, fixed need and a specific remedy for a permanent condition. Those factors, we feel, are too conjectural and speculative in the instant case to warrant an award. Carhee v. Scott, (La.App., 2 Cir., 1958), 104 So.2d 236; Smith v. Aetna Casualty and Surety Company, (La.App., 2 Cir., 1961), 128 So.2d 235.
The special damages proved and therefore allowed by the lower court include: (1) Property damage to automobile$183.18; (2) Medical and hospital expenses$484.87; (3) Cost of taking of Dr. Morin's deposition$45.80; (4) Cost of a cervical traction set$14.28; and (5) Loss of earnings for one month$80.00. The cost of Dr. Morin's deposition should, of course, be assessed to costs, and was apparently included as an item of damages inadvertently. The medical expenses incurred total $484.80 rather than $484.87. Thus, the correct total for special damages is $762.26.
Accordingly, the judgment of the lower court is amended by reducing the award for special damages from $808.13 to $762.26; in all other respects, said judgment is affirmed. Plaintiff and defendant each to pay one-half the costs of this appeal.
Amended and affirmed.